and we'll call the third case. Case number 11-1877, Independence Plus v. Francis, Walter, Kristen, Prince, and Bellows and Bellows. If both attorneys would step up and identify yourselves for the record, please. Good morning. I'm Ellen Crane, representing Appalachian Bellows and Bellows. I'll also be arguing on behalf of defendants Prince and Walter. My name is Herman Marino. I'll be arguing on behalf of the Appellant's Independence Plus case. All right. And both of you will have approximately 15 minutes for your presentation. Before I start, I wanted to point something out in case it's important. This case is a malicious prosecution case of an original case that was originally before Justice Taylor when he was in the circuit court. I don't have an objection if he's going to be sitting in on the panel, but I don't know what the rules are. I don't remember this case. If you don't remember, I just wanted to point that out because none of the other attorneys may be aware of it. The case was Walter v. Independence Plus, Inc. And you made some of the discovery rulings that are the source of the malicious prosecution action. And I want you to know that before we proceed. Okay. And Ms. Green, were you aware of that? Okay. So we'll take a brief recess at this point. Good morning again. After conferring with Justice Taylor, he has decided to recuse himself on the case. And we have our third panel member will be Judge House. He's not going to sit here for the arguments today because he hasn't had an opportunity to go over the briefs, but he will have an opportunity to do so before we resolve anything. He will listen to the arguments that are presented today. And after that, at some point, there will be a decision. But he will be the third panel member. Since Judge Taylor did have some dealings with one of the underlying suits, he chooses not to participate here. Whether the parties agree or not, that's what his choice is. So anyway, we're going to proceed under those parameters. All right. Are we ready to proceed then? Mr. Marino. Thank you, Your Honor. I represent Independence Plus, Inc., which was the plaintiff that filed a malicious prosecution case against three parties, Francis Walter, Kristen Prince, and Kristen Prince's firm at the time, Bellows & Bellows. Our amended complaint was dismissed under Section 5-2-615 of the Illinois Code of Procedure for failing to state a claim as a matter of law. We appeal that decision because we believe that the trial court erred in misreading and not completely reviewing our amended complaint, in which we fully described in detail the specific facts of the special injunctions. That specific injury related to the additional discovery and injury that was required to be conducted by this plaintiff as a result of false allegations made claiming that this plaintiff had engaged in illegal felony conduct in the manner in which it dealt with its particular patients. But does it matter for purposes of the special injury that the nature of the allegations, whether they're egregiously false or false in general or what have you, is that what we're looking at in terms of special injury? Because isn't that kind of a claim that can always be made if the party against whom the action is brought prevails? I understand your question correctly. For purposes of 615, all that we have to do is plead the existence of special injury and facts supporting it. Well, no. Yes, facts supporting it. So I'm just saying, is it enough to say that the allegations were groundless and false to then say, well, that's a special injury? No, that wasn't the whole basis of the special injury. No, I know. I understand. So the answer, I think the answer to your question is no. That's not sufficient. Okay. Because if you go to, what we're left with under cult awareness is that if all you're alleging is that you had to go through the normal defense, cost of defending a litigation, that's not enough to allege a special injury. But these are not those facts because it's not part of the normal cost of litigation. Well, isn't the normal part of litigation attending to discovery requests? Yes, it is, but not when the discovery request is based upon an allegation known to be false of committing felony conduct. There you are beyond the situation where you are defending the normal cost of litigation. And what is the felony? If I can explain by way of example. In this case, your normal cost of litigation would be to produce the emails and the employment file of the particular plaintiff that was suing you for retaliatory discharge. And under cult awareness, you are within the special injury definition if you have already had that claim adjudicated. And that claim was adjudicated by the Illinois Department of Human Rights. And they found that there was no discrimination. They then filed a civil action in which they made two false allegations. One, that there was some mystical email communication that supported Ms. Walter's claim that she had found some illegal conduct. And secondly, that the plaintiff, the defendant in the underlying case, my client, had engaged in felony conduct by changing the hours of particular coverage patients in order to put them in jeopardy. And so what they then had to do is go through and reconstruct all of our records to establish that that was a completely false statement. And then when we made those records available, no one from Ms. Prins and no one from her office came to look at that, which we believe establishes that the entire basis of their claim was in bad faith. And it's not the norm. Well, I've got to tell you, it's a mystery to us that when they didn't come and look at all this discovery, that you weren't right back in front of whatever judge issued those orders to get 137 sanctions. But, Mike, that's a separate question. And the question before us is, is there anything extraordinary or special about the process of conducting discovery in response to allegations that you believe are false? Isn't that just the normal and ordinary course of litigation? There are cases filed all the time that contain false allegations, and part of your job in defending against those false allegations is doing discovery to prove they're false. Well, the answer to your question is twofold. First, they voluntarily dismissed before we got to the point of asking for sanctions. And that's part of what public awareness talks about when they say that the standard for showing that you are the prevailing party is very loose, because had they not voluntarily dismissed, we would have been in – because that's part of what the sanctions under 219 would have asked for, is to limit – But procedurally – you can remind me – but procedurally, couldn't you, even when they voluntarily dismissed, couldn't you go in and ask for 137 sanctions? Sure. Yeah, so that doesn't really – There's nothing that prevents that. The second answer to your question is that, yes, it is part of the normal course of litigation to respond to false allegations. But alleging that someone committed a crime which has nothing to do with the underlying claim – the underlying claim was retaliatory discharge – it wasn't that you were a whistleblower or that you had reported something to the state of Illinois. Remember that Ms. Walter is a licensed practical nurse. She is a mandated reporter. If she had seen some sort of illegal conduct, she was required to report it. She didn't, because this was all a total fabrication. When you have a party that is making an allegation that you engaged in a felony as part of a shakedown, in order to get shakedown money out of you, you are outside of the normal defense of litigation and you have walked into special injury for purposes of malicious prosecution. Well, what case says that? No case says that specifically, but cult awareness talks about when they rely upon the Norrin case, N-O-R-R-I-N. That was an underlying case where someone had filed a bankruptcy petition, and so they tied up someone's property, and then they dismissed the bankruptcy petition and got the property released. And the language that cult awareness used – if I can check my notes briefly – was that that constituted special injury because it was a unique proceeding that was intending to tie up the property of the defendant. Well, we don't have that here. You have that here because Independence Plus is a regulated company. By alleging that they had engaged in a felony, you were seeking to deliberately debilitate their business. Well, were there any regulatory actions begun that somehow – No, nothing other than this case was initiated. But, for example, the only way I can look at this in my simple mind is this. Suppose I were working for a law firm. They find out I'm not that good. After six months, they fire me. And then I claim that they really fired me because I had found out that they were stealing client funds. And so then I make that claim in the civil litigation that they're stealing client funds. It happens to be false. And they have to go through and spend all of this time – and it has nothing to do with my underlying claim that I was discriminated against because I'm 61 or whatever my underlying claim is. I just make that fabrication, saying to my lawyers, well, if we make that allegation, they're going to have to settle because they don't want to go through the expense and time of having to prove that they made all of their distributions correctly of their client funds. That's the situation you have here. You have a claim of felony conduct that has nothing to do with the underlying claim and, based upon the allegations in the complaint, was made solely for the purpose of obtaining shakedown money from this client. And that's all we have to allege. Well, what's the underlying cause of the action? The underlying cause was retaliatory discharge. Okay. And so you say that in their retaliatory discharge claim, they alleged this felony? No. I'm saying that in the claim before the Illinois Department of Human Rights, it never came up. It came up in the civil proceeding when she filed a common law retaliatory discharge claim. And this allegation was made that there was felony conduct going on. Right. It didn't relate to the claim. No, because her original claim was I was discriminated against because of my age. Okay. Well, so then it was collateral, really. It didn't have anything to do with the cause of the action. Correct. That's correct. That's the point. Why didn't you just move to strike it, then? Why didn't you just go in front of the motion judge and say, you know what, judge, this doesn't have anything to do with the cause of the action here, and it's a smear against my client, and I'd like you to strike it? We did. What the prior litigants – And was it stricken at that point or not? What the attorneys did was went in front of Judge Taylor and said, this has nothing to do with our claim. Please limit the discovery because you're ordering us to produce all of our patient records. Over a long period of time, we have to then redact those records, and then we don't have all of them on our computer system, so we have to reconstruct our hard drive and reconstruct our server. And the trial judge then said, no, I'm going to allow for full-blown discovery. So did they come in and move to strike the allegation? No. But they attempted to accomplish the same thing by seeking to limit the discovery in order to cut off the cost that the plaintiff, Walter, was attempting to hoist upon them in that litigation. And so therefore – What was the reasoning behind that rule? I wasn't there, and there was no court recorder, but I'm told that it was based upon just the general rule that there should be broad discovery. That's all. Would you say that the three actions that were brought outside the circuit court, the administrative complaints, would you say that those were all duplicated or that they were part of the circuit action that was eventually brought? They were duplicated in the circuit court action, which results in falling within the definition of special injury under S.H.E.D. because what S.H.E.D. says and what cult awareness says is that once you've had your claim adjudicated and then you proceed to reduplicate that in future proceedings, you can be sued for malicious prosecution because that is the essence of special injury, filing new actions alleging the same thing that has been disposed of in a prior proceeding. You would agree that cult awareness is a little bit out there in terms of facts compared to this case. Right, yes. But S.H.E.D. is closer to what you're suggesting. Correct, because what S.H.E.D. had was a possession order that the- There were nine successive lawsuits in that case. Right. I think there were four in law and five in chancery or five in law and four in chancery. I forget. So that was more similar to our situation. But S.H.E.D., the gloss that S.H.E.D. provides is the fact that the definition of special injury is relapsed when you have someone who has had their claim adjudicated and then continues to proceed. And our point is that the specific allegations of special injury that are in our complaint cannot support the dismissal under 615 based primarily upon the S.H.E.D. case because S.H.E.D. makes it clear that special injury can arise and does arise when you have had your claim adjudicated and you proceed to go forward with the same claim. And then on top of that, allege illegal conduct that was never part of the underlying claim to begin with. I can't see whether I'm out of my time, but if there's any further questions, I'll be happy to respond. Do you have anything further to say? Thank you. All right. We'll have a few minutes for rebuttals. Ms. Green? Good morning. Good morning. Plaintiff is bringing up cases involving the or complaining about the discovery that was served and the scope, but he doesn't tie that to any particular injury other than the litigation costs that the IPI incurred as a result of having to comply with that discovery. And the single issue here is whether IPI has flood facts in its first amended complaint that are sufficient to allege a special injury that supports a claim of malicious prosecution. And in its complaint, all they allege is that they incurred attorney's fees, lost administrative time, and harm to its reputation. And courts have repeatedly held that these kind of litigation costs and time and expense, these are not sufficient to support a malicious prosecution action, that instead they're considered the ordinary consequences of litigation. Well, these first three administrative complaints were all resolved against your client. Isn't that true? No. No? What was not resolved against your client? Well, there were three different administrative proceedings. Administrative complaints. Yeah, two of them were filed with the Department of Labor. One was a complaint to obtain certain documents from her personnel file. That was a personnel records review act complaint. Wasn't that eventually dismissed against? It was. They concluded the case. Unfavorably as far as your client is concerned, didn't they? No. It was after she filed her complaint in the circuit court in November of 2007. In January, the Department of Labor concluded the case and just gave her leave to pursue other civil remedies because there wasn't a circuit court action proceeding so that she could obtain those documents through the ordinary court. They didn't give her any relief, did they? No. Administrative relief. No, they did not. But they did not find it meritless or anything improper about her having filed a claim there to obtain the records that she believed that I did.  She did not obtain any relief. And did she get any relief in the other two administrative actions? For the wage claim, she also did not obtain any relief. There was a notice of dismissal where the Department of Labor determined that the act didn't apply, the wage act, because it only applied to earned wages and they considered her claim, which involved a promise of a raise that she was to receive after six months if she had a positive review, they considered that wasn't within the scope of the act. It only applied to earned wages, not promised wages. But they didn't say it was resolved in her favor. No, she didn't get any relief. No, she didn't. And then what about the third one? Did she get any relief in the other administrative actions? No, she did not. In the discrimination charge in front of the Illinois Department of Human Resources, they found there was no legal or factual basis, and they dismissed the charge because there was substantial. So can we take that into account in reading the whole complaint to determine whether there's a specialty here? Yes, because it's unlike the Shedd case where there was a case that was adjudicated and the plaintiff filed case denied it. Well, in Shedd there were nine actions. Here we've got, the way they allege it, there's three actions in the administrative setting, and then the complaint that was filed in the law division? Correct. How many counts were in that complaint? Well, they come up with nine causes of action by the time you. Well, were there five counts in the? No. There were three administrative proceedings. How many counts were in the action? In the original complaint, there were two counts. How many were there in the amended? Three. There was, correct, and there was. And that suit was voluntarily dismissed? Yes. Should we take that as a fact? A fact that it was dismissed, I don't think. No, should we take that into account in reviewing the whole pleading to determine whether or not there's sufficient facts to get past a motion to dismiss, failure to state cause of action? That's how it was dismissed, wasn't it? It relates to elements such as, you know, was the underlying case, was there a favorable determination? Does the average case plead allegations that multiple requests for discovery were asked and then pleads that the party seeking the discovery chose not to even review the discoverable material that was provided? Well, that potentially goes to motivations or some other elements. Well, we have to look at the whole complaint. Their allegations in their entirety are what they are arguing. There's a support not dismissing this case on a 2-6-1-5. Now, do the allegations suggest that the attorneys for, you know, and then the other party, your client, chooses not to even look at this discovery? That's what they allege. Yes, but we're bound by what they allege. Yes, correct. Those are facts that we take as true. And then this whole lawsuit at some point is voluntarily dismissed. So aren't we looking at all these facts before we decide whether this amounts to special injury? It's something that can be considered, but it does not rise to the level of a special injury. All it supports is that they spent money in complying with discovery that they deemed burdensome or unnecessary. Well, doesn't it seem to be unnecessary at the end of the day when the whole complaint is voluntarily dismissed by the plaintiff? That could be said about any case in which discovery was conducted and the plaintiff chose to voluntarily dismiss their case. But not every case has the other actions pending and went through three different administrative proceedings and has these allegations about, you know, I mean, the allegations are that the discovery was never reviewed. So I don't know how you can leap to say, well, this was voluntarily dismissed because we reviewed the discovery and the discovery didn't show us what we needed. But the allegations are actually different than that. They're saying that none of that material that was sought out was ever even considered. So that is a factual allegation that there's more injury that was present in this case than the average run-of-the-mill lawsuit. But that injury, again, is just their time that they complained about and expense and lost time in putting that discovery together? Well, at some point the time and the expense becomes malicious. I mean, isn't that what it's all about? At some point you go beyond the normal and you file multiple lawsuits. This was not like one little suit. It was three administrative proceedings in different locations and then you have a separate lawsuit filed in the law division that's eventually voluntarily dismissed. So it's not like one little suit, is it? It is one lawsuit. And that's the thing that has to be taken into consideration that, you know, this isn't an employment case and that the plaintiff either had available or was required to first exhaust her administrative remedies before she took this action to the circuit court. And they chose to avail themselves of the remedies or attempt to that were there, going to the Department of Labor to get a record. Were two complaints in the Department of Labor? Yes. So what was the point of doing two separate complaints? Because they were under different acts. It wasn't in one piece of paper. So that's another fact that's in there is that there's two complaints filed with the Department of Labor, but for whatever reason they were filed separately. Well, one is to obtain the personnel records and the other was the wage claim. But there's nothing that would suggest any reason why those would be filed independently. It doesn't suggest that there was any additional burden placed upon them. Well, it does because you have to go to two different places at two different times and respond to two different things that could have been joined in one. It's just another factual allegation about what was going on here. Can the argument be made that it was a logical progression and we wanted to get the records so that we could determine whether or not we had additional grounds to proceed with a further action? That may have been a motivation for the plaintiff. Because your argument is basically, your argument is that, you know, don't blame us for following the administrative process, and the administrative process is exhaust your administrative remedies before you come to the circuit court. Which is burdensome for the plaintiff as well as the party who has to respond to them. That's just the way they're set up. And they want to be cautious and try to resolve these things through the Department of Labor. If you go to the circuit court first and you haven't exhausted your administrative remedies, you're going to get kicked out. They'd be complaining about that as well. You should have gone to... Now we've got to pay to go to the circuit court, now we've got to go back to the tribunal, and that costs us money, right? Correct. Well, what about their... was that there's something different about this because we're in a highly regulated industry and you accused us of a felony. And you didn't even have to accuse us of a felony in order to sustain your claim of retaliatory discharge. His statement today was the retaliatory discharge action didn't need this allegation of committing a felony. But since it was in the complaint, they had to respond to it and they had to do discovery with regard to it. And it was that false allegation, which was unrelated to the retaliatory discharge, that they tried to limit discovery, they failed, and so they had to go through all this discovery on a false claim that was really unnecessary. And the real reason for that claim being there was to hold them up. Well, honestly, I'm not sure what they're referring to as a felony. If you read the complaint, it's not identified in particular. I'm guessing it relates to an amendment to the pleading later where she complained about... or said she was fired because she complained about patient care, that they were servicing patients with private insurance on holidays over wards of the state because they'd get more money for doing that. He can correct me if that was the nature of the complaint. But if they felt that that allegation was made maliciously or falsely, they had recourse to Rule 137 and could have sought sanctions. At the time, while they're involved in that case and address it before the court... It's a requirement that they do that in order to seek out a claim for malicious prosecution. They don't, but the benefit to them by bringing a Rule 137 sanction motion is that they do not have to plead special injury. That's their opportunity to recover things like attorney's fees or just litigation costs, where if you bring a separate malicious prosecution action, you're required to plead a special injury. And the case law is clear that litigation costs are not enough. It has to rise to the level of an onslaught of litigation, such as was an issue in cult awareness where there were... Well, that's the far, far end of the spectrum. It is the far. That's the outer limits. But they haven't... They're not suggesting... Cult awareness is the outer limits. That's not the limit here. I mean, you can go in less than that. The case was decided 15 years ago, and they have pointed to no cases in the last 15 years that are somewhere in between that, you know, maybe... What is SHED? SHED isn't... That's 1922. Yeah, but that's not like cult awareness. No, that was consecutive filings. That case was even more extreme because they apparently... There's no requirement about consecutive filings. No, oh, no, no. And I think that came up in the briefs. I don't think there was any... I think that the trial court had mentioned that three of these were filed on the same date to show that it wasn't a pattern because you couldn't establish a pattern if you're doing something all at the same time. And we're not suggesting, you know, it has... If you're either under SHED or cult awareness, it has to be either consecutive or simultaneous, but that's a requirement. But the general rule is the special injury, you know, cannot be satisfied by litigation costs, time and expense. That's all they plead. And to fall within that exception that's created by cult awareness of some sort of onslaught of litigation, they don't reach that here. There's really only one lawsuit that was filed, and they did voluntarily dismiss that, but it was preceded by three administrative proceedings that either were required or available to resolve the disputes that she had. And another thing to consider is, and they brought this up in cult awareness, is that there's a balancing test that the trial court had to make, and this court has to make as well, between preventing harassing lawsuits and allowing a litigant, you know, a day in court to bring their claims. And in the employment context, if employees are required to go through administrative agencies and file claims, they're halfway there to a malicious prosecution action by virtue of having to file multiple claims. And if you're counting counts of their complaint or amendments to your pleading, you know, it's going to discourage employees from bringing actions, and it will encourage employers to bring malicious prosecution actions in an attempt to recover their fees in the event that the employee is unsuccessful in the employment lawsuit. Do you accept this argument that the, and I guess when Counselor stands up again, we'll ask him about this felony, but do you accept the argument that the allegation of the complaint was unrelated to the retaliatory discharge cause of action? Because it's my understanding that in the retaliatory discharge cause of action, the plaintiff stated, I was fired because I had complained about the way patients were being cared for. Is that right? Honestly, the underlying complaint is not part of, was not attached to their complaint. So it's just as pled in their pleading. And since, well, my question is, and I'll ask Mr. Marino this, if the retaliatory discharge complaint says, I was fired because I had complained about this, and then they responded by saying, oh, now she's accusing us of doing something, and that she's complaining, and so we fired her because she blew the whistle, now we have to respond to whether or not we actually did this misconduct with regard to patient care, then that's, it is related to the retaliatory discharge. Yes, but this is the kind of thing that happens all the time when an employer gets sued and maybe it's meritless or false. I'm not saying it is in this case. It's just, you know, what's your remedy then? If it's being maliciously or it's false, they have a Rule 137. Yeah, but I mean, but the point is, with regard to our discussion today, and the question of special damages, this is the stuff that happens in lawsuits, especially in specific with regard to a retaliatory discharge complaint. They fired me, and they said they fired me for one reason, but really they fired me because of this. And when the defendant, the corporation or the company, the employer, and says, well, she says we really fired her because of this, and we didn't do that. That's just the ordinary course of litigation. The plaintiff employer will always consider that to be false. And respond to it. Correct. As part of their defense. And nobody wants to be sued, and nobody wants to incur these costs. It's just, that's the cost of litigation. But to be able to sue and recover your attorney's fees, it just has to be something more than having incurred those fees. And they failed to plead anything more than that in this case. But if you have no further questions, we'd ask you to affirm the trial court's dismissal order in its entirety. Thank you. Mr. Moreno. Just briefly, if I may, the quotation from the Noren case that's in cult awareness that I was grappling with was the statement that the appellate court stated, this court rejected the argument that the filing of a bankruptcy case was an error because of the far-reaching and drastic effects associated with that proceeding. And that's the analogy I'm drawing in the claim of illegal conduct here, that it goes beyond the normal allegation that was made. Well, what was the basis of her retaliatory discharge? Why was she being retaliated against in the complaint? In page 8-12 of the record, the section of the malicious prosecution claim does state that her retaliatory discharge claim made a claim for the first time in the civil action that she had been actually fired because she had reported illegal conduct. Okay. So then it does relate. Let's be specific about this because I want to know. I'm on the correct case. I made an inaccurate statement before. No, I want to make sure that I nailed this down. If you look at 8-12 of our separate appendix, it's in paragraph 43 of the amended complaint for malicious prosecution. It's under tab 1. Paragraph 43. Page 10, which is record 8-12. Okay. If you look at paragraph 43, this malicious prosecution complaint is reciting what was alleged in the retaliatory discharge claim. And paragraph 43 indicates that the defendant was alleging that she was terminated because she allegedly complained about patient care. And my point was that that was a new claim that was being made that was different from her Department of Labor and Department of Human Rights claims. Okay. So she can't make a new claim? No, she can't if it's false and if it happens to allege illegal conduct. All right. Where is the illegal conduct? This paragraph doesn't say anything about illegal conduct. No, it doesn't. That's a pretty generic statement. That's correct. The illegal conduct was that she was alleging that Independence Plus was leaving their quadriplegic patients without care over holiday periods because they didn't want to pay overtime. That would have been not only a violation of their contract, that would have been a violation of the statute because 60 to 70 percent of their funding comes from the State of Illinois and there are specific regulations that identify what they can and can't do in order to get their funding. Was she required to exhaust her administrative remedies? Is that a given? It depends upon which claim we're referring to. The claim for her HR file, no. She could have made that demand directly upon the records claim. It could have been made directly upon the company and the company would have been obligated to turn over and did turn over her HR file. Her wage claim would have had to go through the Illinois Department of Labor, but they found it to be baseless because she was fabricating a story about how they had made an oral promise to give her a bonus after six months of work. The retaliatory discharge claim would have required them to go to the Illinois Department of Human Rights and get a right to sue letter or take it up to the counsel. And, of course, if you look at the allegations in the malicious prosecution complaint, they had 90 days to file that and they couldn't even do that within the statutory period because they filed that out of time. Let's go back to that page 10, paragraph 43. Right. It's at the top. The title is third amendment complaint count one. Right. And then at 42 it says second amendment complaint count retaliatory discharge. Is it the third or the second? Sorry, say that again. Well, it says circuit court of Cook County complaint third amendment. It's the third amendment complaint count one. Okay. And then in paragraph 42 it says on December of 08, they filed the second, defendants filed the second amendment complaint. That's giving you the history of how it led up to the third amendment complaint, I believe. I see. And then it says defendants all of a sudden asserted that the IPI terminated Walter because she complained about patient care. Is that in the second amendment complaint? I don't recall. Okay. Well, it's in the second or the third. It's in the third, I believe. Okay. It's in the third. So she says you fired me. This is what she says in her complaint, which you say is a malicious prosecution. You fired me because I complained about patient care. So your point right now is now we have to defend ourselves against an allegation of breaking the law with regard to patient care. Correct. Well, isn't that just part of a retaliatory discharge claim? No. You fired me for an unlawful reason. You really fired me because I was complaining about something you were doing. And now you have to say, well, we weren't doing it. Actually, I'm not so sure you had to respond to that because you could just say that's not why we fired. But anyway, if she's saying I complained about this and then you said we didn't do it, that's just litigation, isn't it? No, because her claim in the Illinois Department of Human Rights was that she was discriminated against because of her sex and her age. But this is a new claim. Can't you add claims? No, I don't believe so. As litigation goes on, don't we see it all the time? Sure. Oh, Judge, we found out about another thing. We got another count. She comes in and she says this is really why you fired me because I never raised before. That's something she would have known. Right. Not only would she have known it, but if it was that significant, she claims that there was an e-mail where she reported it, something that significant, but she didn't know when the e-mail was generated and didn't have a copy. Our point is that the allegations in the malicious prosecution complaint specifically state that this is a fabrication of illegal conduct made for no other purpose than to obtain a shape. And that's all we have. And my argument is for purposes of 615, that's all we have to allege to survive a motion to dismiss as a matter of law, and therefore I'm asking that the judgment of the trial court be reversed. So you're saying that any harassing lawsuit that is false is enough to get passed? I'm saying that if you allege illegal conduct against someone, licensed attorney, licensed accountant, that directly impacts their ability to function and to conduct business, then the answer to your question is yes. All right. Okay. Thank you very much for your time. The case was well-argued and well-briefed today and will be taken under advisement. Thank you. And that concludes our.